In re Barr, Bankrupt, et al.

[Cite as In re Barr, 17 Ohio Misc. 236.]

(Nos. B67-928 and B67-929—Decided August 13, 1968.)

United States District Court for the Northern District of Ohio, Western Division.

*Mr. Norman E. Bischoff*, for bankrupts.
*Mr. John G. Mattimoe*, for objector.
*Mr. Walter R. Wertheim*, for Small Business Administration.
*Mr. Philip R. Joelson*, trustee in bankruptcy.

KRASNIEWSKI, Referee in Bankruptcy. This matter came on to be heard upon the specification of objections to the discharge of Elizabeth Ann Barr and Medford Lee Barr, bankrupts herein, filed by the United States Attorney for the Northern District of Ohio in behalf of the Small Business Administration, pursuant to Section 14c(3) of the Bankruptcy Act.

At the hearing there appeared Walter R. Wertheim, litigation attorney for the Small Business Administration, in behalf of the objector and Norman E. Bischoff, attorney for the Bankrupts, and the bankrupts were also present.

The ground of the objection is identical in each of the above cases. It alleged that the bankrupts while engaged in business as executives, namely as officers and stockholders of Malla-B-Inc., an Ohio corporation, obtained for such business, money or property on credit from the Small Business Administration, an agency of the United States Government, by making or publishing, or causing to be made or published, a materially false statement in writing respecting their financial condition.

At the hearing the respective parties agreed that the objections in each of the two cases involved the same question of fact and law and stipulated that the cases should be consolidated and all of the evidence apply with the same force and effect to both cases.

The objections in each case were filed on October 19, 1967. Thereafter on November 1, 1967, the United States Attorney filed his request for admissions under Rule 36 F. R. C. P., a copy of which was mailed to the bankrupts and also to their attorney. The request was made to either admit or deny the following matters:

1. That the personal financial statement attached to the specification of objections is valid.

2. That each of the following statements is true:

a. Medford Lee Barr at all times between October 20, 1964, and May 11, 1967, was president and a stockholder of Malla-B-Inc. (That Elizabeth Anne Barr was secretary-treasurer and stockholder.)

b. Malla-B-Inc., obtained a loan from the Small Business Administration in the amount of $15,000.00 on February 26, 1965.

c. Medford Lee Barr (and Elizabeth Anne Barr) guaranteed the said loan made to Malla-B-Inc.

d. The personal financial statement omitted personal debts in the total amount of $14,310.08, which were specified in the bankruptcy petition in case No. B-67-928 (and case No. B67-929).

e. The bankruptcy petition lists these debts as having been incurred prior to October 1, 1964.

The request for admissions was neither answered nor objected to by either of the bankrupts.

At the hearing counsel for the objector moved that each of the matters in the request be deemed to be admitted and the discharge denied by reason of the bankrupts default in complying with Rule 36. The bankrupts, through their counsel, admitted receipt of the request for admissions but offered no explanation for being in default. The motion was not granted in toto but the court found that at this point the objector established a *prima facie* case

under Section 14c and required the bankrupts to go forward with their evidence.

The objector's case therefore was that the following debts were omitted from the bankrupts financial statement:

| | | |
|---|---|---|
| Burnor Insurance Agency | 1963 | $ 765.00 |
| Carlton Cook | 1962 | 25.00 |
| Dr. Denham | 1962 | 15.00 |
| Erie Loan Company | 1962 | 2,368.00 |
| Funds for Education | 1961 | 3,137.08 |
| Maw-Vac, Inc. | 1963 | 8,000.00 |
| | TOTAL | $14,310.08 |

The evidence adduced at the hearing established that the bankrupts, as husband and wife, were officers and sole stockholders of a corporation known as Malla-B-Inc., an Ohio Corporation organized and existing from August 13, 1964, to the date of bankruptcy which was May 11, 1967. Its principal business was that of selling cosmetic products known as Fashion 220 under a franchise agreement with an Ohio Corporation known as Maw-Vac, Inc. The franchise agreement gave Malla-B-Inc., the exclusive privilege of selling the cosmetic products of Maw-Vac, Inc., in Lucas County, Ohio, under a written agreement dated August 9, 1963, for a franchise fee of $10,000.00.

In order to finance the business operations, some time in March 1964, the bankrupts contacted the Small Business Administration regarding a loan to Malla-B-Inc., in the amount of $15,000.00. Negotiations continued with the Small Business Administration to the point where on October 20, 1964, Malla-B-Inc., executed a loan application by its President, Medford Lee Barr.

The application stated that the proceeds of the loan would be used to buy more adequate inventory and to retire two notes to Ohio Citizens Trust Company each in the amount of $5,000. One note was dated December 1, 1963, maturing on December 1, 1964. The other note was executed May 21, 1964, and matured November 20, 1964. The

loan application indicated that the assets of the corporation were valued at $26,219.25 and the only indebtedness against it were the two notes to Ohio Citizens Trust amounting to $10,000.

In order that the Small Business Administration grant the loan application it required the bankrupts to file their joint personal financial statement showing their assets, liabilities, and net worth. It was effective as of October 1, 1964. As of this date it indicated their assets amounted to $37,540, liabilities of $31,300 with a net worth of $6,-240.00. The liabilities were itemized as follows:

| | |
|---|---|
| Accounts Payable .................... $ ....... | |
| Notes Payable to Banks .............. $ 5,800.00 | |
| (Describe below in Section 2) | |
| Notes Payable to Others .............. $ ....... | |
| ((Describe below in Section 2) | |
| Installment Acct. (Auto) ........... $ 2,000.00 | |
| Monthly Payment $124.00 | |
| Installment Accts. (Other) .......... $ 3,200.00 | |
| Monthly Payments $140.00 | |
| Loans on Life Insurance .............. $ ....... | |
| Mortgages on Real Estate ........... $ ....... | |
| (Describe on reverse side in Sec. 4) | |
| Unpaid Taxes .................... $19,500.00 | |
| Describe on reverse side Sec. 7) | |
| Other Liabilities .................... $    800.00 | |
| (Describe on reverse side Sec. 8) | |
| Total Liabilities .................... $31,300.00 | |
| Net Worth ......................... $ 6,240.00 | |
| Total | $37,540.00 |

The personal financial statement was on a form adopted by the Small Business Administration and consisted of two pages. Section 2 of this form contained seven lines which provided for itemizing the ''Notes Payable to Banks And Others.'' Five of these lines were utilized. One of the five indicated a loan from Ohio Citizens Trust in the

amount of $2,000 which was the same indebtedness as set forth in the summary of liabilities and appeared to be based on an automobile loan. The other four lines indicated a balance due to banks amounting to $8,400.

In the liability section, which summarized the total obligations based on "Notes Payable to Banks," the amount stated was $5,800. It therefore appeared that the summary of the "Notes Payable to Banks" was in error by some $2,600. This would have reduced the net worth of the bankrupts to $3,640 but still apparently leaving them solvent.

The personal financial statement form also contained a blank for setting forth "Contingent Liabilities with a subheading "As Endorser of Co-Maker." In this blank the bankrupts listed an obligation of $10,000 and typed along side thereof were the word "Co. Note."

The bankrupts, in attempting to rebut the objector's case, took the position that the $8,000 debt due to Maw-Vac, Inc., was included in the $10,000 obligation they described in their financial statement under "Contingent Liabilities." as "Co. Note." They further argued that they really did not owe Maw-Vac, Inc., anything but if there was an obligation due that is where it was listed. However, in response to a question by the court bankrupts admitted that on October 1, 1964, there was in fact due to Maw-Vac, Inc., approximately $4,000 to $5,000.

On the other hand, as heretofore mentioned, the corporation's loan application dated October 20, 1964, indicated $10,000 due Ohio Citizens Trust based on two notes upon which the bankrupts were liable as comakers. In fact, bankrupts testified that as a further inducement to the Small Business Administration to make its loan to the corporation during the negotiations in March, they were told that if they could get a loan from Ohio Citizens Trust with no security but with their own promise to pay as comakers, obtaining the $15,000 loan from the Small Business Administration would be relatively easy. As mentioned above, one of the loans from Ohio Citizens Trust in the amount of $5,000 was made shortly thereafter on May 2, 1964.

The court cannot accept bankrupts explanation that

the debt due Maw-Vac, Inc., was listed as a contingent liability. The conclusion is inescapable that the so-called contingent liability, "Co. Note $10,000," clearly referred to the two corporate notes to Ohio Citizens Trust upon which the bankrupts were liable as co-makers.

The court therefore finds that the bankrupts omitted a $4,000 to $5,000 debt due Maw-Vac, Inc., from their personal financial statement of October 1, 1964.

The bankrupts in further attempting to rebut the objectors case regarding the indebtedness to the Erie Loan Company in the amount of $2,368.00, stated that this obligation was set forth in the liabilities section of their financial statement in the amount of $3,200 on the line for setting forth "installment accounts (other)." Objector's Exhibit No. 3 which was a copy of a ledger card, indicated that in February 1964, there was a balance outstanding of $3,300. No payment was made on this obligation until March of 1965. Although the obligation was based on a note executed by both bankrupts and there were two additional blank spaces provided in Section 2 for describing "Notes Payable to Banks and Others," the court accepts the bankrupts' explanation that the $3,200 obligation was the same debt set forth in the liabilities column under "Installment Accounts."

Regarding the indebtedness to Funds for Education, Inc., bankrupts admitted this had been a running account since 1961. They further admitted signing two notes on September 5, 1964, one month prior to executing the personal financial statement. Each note was payable to Funds for Education, Inc., in the amount of $2,450 for a total indebtedness of $4,900. Bankrupts further admitted that nowhere on the personal financial statement of October 1, 1964, was this indebtedness listed. No explanation was offered why it had been omitted.

It is the courts opinion that bankrupt's personal financial statement as of October 1, 1964, failed to disclose the debts due to Maw-Vav, Inc., and Funds for Education, Inc., totalling approximately $9,900.

The court further finds that the debt due to Burnor

Insurance Agency, Carlton Cook, and Dr. Denham were running accounts with no balance due on the date the bankrupts executed their financial statement.

At the hearing the objector introduced the deposition of Richard C. McConnell, a former loan specialist, upon written interrogatories. Mr. McConnell processed the loan application of Maw-Vac, Inc. In his answers, he stated he would not have recommended approval of the loan of Maw-Vac, Inc., if he would have been aware of the undisclosed personal debts of the bankrupt amounting to $14,000. He also stated that during the time of processing the loan, on December 14, 1964, he specifically asked Mr. Barr if the franchise fee to Maw-Vac, Inc., was fully paid. The answer was in the affirmative. Bankrupts offered no evidence to rebut this testimony. Objectors prima facie case of reliance on the financial statement remained undisputed.

In the case of *Industrial Bank of Commerce* v. *Bissell* (1955), 219 F. 2d 624, C. C. A. 2d Cir., the court at page 626 stated as follows:

"* * * reliance on a financial statement need not be proved by direct testimony. Ordinarily it may be proved by evidence showing that the statement was made to support an application for credit and that credit was given *after receipt of the statements. Berberich* v. *Northern Illinois Corp.*, 7 Cir. 190 F. 2d 53, *In re Savarese*, D. C. E. D. N. Y., 56 F. Supp. 927, *In re Sheridan*, D. C. N. J., 34 F. Supp. 286."

Partial reliance on borrower's statement has been held to be sufficient ground for denial of discharge, where such statement was false, *Banks* v. *Seigel* (1950), 181 F. 2d 309, C. C. A. 4th Cir. A prima facie case was made where the treasurer of a credit union testified that he would not have passed the proposed loan to the credit committee if he had not relied on bankrupt's statement, *In re Siegel* (1958), 159 FS 704 U. S. Dis. Ct., N. Y.

*In Morimura, Arai & Co.* v. *Taback*, 279 U. S. 24, 33, 49 S. Ct. 212, 215, 73 L. Ed. 586, the court said that a written statement under section 14c (3) to overturn a discharge must not only have been materially false, but must have

been made "with actual knowledge that it was incorrect, or with reckless indifference to the actual facts * * * and with no reasonable ground to believe that it was in fact correct."

Numerous cases have followed the Supreme Court's doctrine as to recklessness in preparing a financial statement as a ground for denial of a discharge in bankruptcy. Even when bankrupts did not know statements signed were false, signing without examining was considered reckless and grounds for denial of discharge, *Wollen Corp.* v. *Gitning* (1929), 33 F. 2d 259, C. C. A. 3rd Cir. It was held where personal financial statements were either knowingly false or made with reckless indifference to facts, there was ground for denial to discharge, *In re Brownstone* (1936), 17 FS 402 Dis. Ct., N. Y. A wife was denied a discharge because of reckless indifference in signing financial papers prepared by her husband, *David* v. *Annapolis Banking & Trust Co.* (1953), 209 F. 2d 343, C. C. A. 4th Cir.

*Section 14c of the Bankruptcy Act* in pertinent part provides as follows:

"That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

After the burden of proof has shifted, the bankrupt must show by preponderance of the evidence that the allegations of the specifications are untrue. See *Rogers* v. *Gardner* (1955), 226 F. 2d 864, C. C. A. 9th Cir. In the case of *Gangzberg* v. *Johannesen* (1962), 300 F. 2d 40, C. C. A. 5th Cir., the court held that if the evidence is in a state of substantial equilibrium the discharge must be denied since the bankrupt has failed to carry his burden of proof.

As heretofore mentioned the court held that the objector made out a prima facie case and put the burden to overcome it on the bankrupts.

Both bankrupts are educated, intelligent persons. Med-

ford Barr is a school teacher employed by the University of Toledo. Elizabeth Barr is also a school teacher employed by the Washington Township School District in this city. The need of a full and complete disclosure should have been fully appreciated by them when applying for the loan.

The court can only conclude that the bankrupts failed to meet their burden of overcoming the prima facie case established by the Objector that the omission of the debts due Maw-Vac, Inc., and especially the debt due Funds for Education which arose one month prior to executing the financial statement was made with the intent to deceive. The bankrupts discharge therefore must be denied.

ORDER

At Toledo, in this District, this 13th day of August, 1968.

For the reasons set forth in the foregoing memorandum, it is, ORDERED, ADJUDGED AND DECREED that the discharge of Elizabeth Anne Barr and Medford Lee Barr be and the same hereby is denied.

/s/ Walter J. Krasniewski

Referee in Bankruptcy